UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID M. GAGE,

       Plaintiff,

v.                                                                                    Case No. 1:14-cv-346
                                                                                   Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                                  /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on September 10, 1951 (AR 141).[1] He completed four or more years of college (with credentials as an international certified accountant) and had past employment as a general manager of a business (AR 36, 46-47, 147). Plaintiff alleged a disability onset date of March 17, 1997 (AR 27). However, he did not file the present claim for DIB until August 9, 2010, more than 13 years after the alleged onset date (AR 27).[2] Plaintiff identified his disabling conditions as: brain surgery, left temporal resection; brain surgery, removal of left hippocampus; depression; severe headaches; short term memory loss; language word application problems, word misuse; easily

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The Court notes that this is not plaintiff's first application for benefits. He previously filed an application for DIB on August 15, 1997, alleging a disability onset date of February 28, 1997 (AR 27). The application was denied on November 10, 1997 (AR 27). Plaintiff did not appeal the denial (AR 27).

agitated; fixation on specific topics; relational issues; thought sequencing issues; and brain surgery, left temporal lobe resection (AR 145). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 10, 2012 (AR 27-37). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 17, 1997 through his date last insured of December 31, 2003 (AR 29-30). At the second step, the ALJ found that through the date last insured, plaintiff had the following severe impairments: cognitive disorder, not otherwise specified; congenital fusion C2-3; chronic low back pain; history of seizure disorder; and status post repair of bilateral inguinal hernias (AR 30).  At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 30).

The ALJ decided at the fourth step that, through the date last insured:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he was limited to only occasional interaction with coworkers and supervisors and no dealing with the public.  In addition, he was limited to tasks only requiring the ability to understand, remember, and carry out, short, simple instructions.  Lastly, would have needed to avoid working at unprotected heights or dangerous machinery.

(AR 31-32).  In addition, the ALJ found that through the date last insured, plaintiff was unable to perform any past relevant work (AR 36).

At the fifth step, the ALJ determined that through the date last insured,  plaintiff could perform a significant number of unskilled, light work in the national economy (AR 36-37). Specifically, plaintiff could perform the following work in the State of Michigan: assembly small parts (approximately 8,000 jobs); inspector (approximately 7,000 jobs); bench assembly (approximately 8,000 jobs); office helper (approximately 7,000 jobs); photocopy machine attendant (approximately 4,500 jobs); and stock clerk (approximately 5,000 jobs) (AR 37).  Accordingly, the

ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from March 17, 1997 (the alleged onset date) through December 31, 2003 (the date last insured) (AR 37).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

**The ALJ failed to properly weigh the appropriate factors, overlooked extremely probative evidence, and failed to address a limitation critical to the disability determination. Was the ALJ's rejection of Dr. Walkotten's treating source statement not based upon substantial evidence according to 20 C.F.R. § 404.1527(c)?**

Plaintiff contends that the ALJ failed to properly evaluate the opinions of his treating physician, Ruth Walkotten, D.O., which appear in a sworn statement dated June 7, 2011 (AR 595-98). In this document, the doctor stated that she treated plaintiff prior to his March 1997 left temporal resection through June 7, 2011 (AR 595-98). The doctor noted that before the left temporal resection, plaintiff "had no apparent physical or emotional limitations," that the changes "are consistent with recognized complications associated with the surgery," and that "[m]any of the changes would be readily apparent to a lay person, as well as a physician" (AR 596). Dr. Walkotten's statement included the following list of deficits which, according to the doctor, limit plaintiff "socially, occupationally, and in all general aspects of functioning":

> 7. Mr. Gage exhibits significant deficits in short-term memory. This interrupts his functioning concerning normal daily activities.
>
> 8. Mr. Gage exhibits obsessive compulsive traits that interfere with his ability to work with others and which impact his daily life.
>
> 9. For the reasons described herein, Mr. Gage is incapable of maintaining a schedule independently. He requires repeated reminders. His ability to maintain a schedule is also complicated by

>his reluctance to leave home, even when accompanied by his wife.
>
>10. Mr. Gage is unable to tolerate stress. Insignificant events upset him.
>
>11. At times, Mr. Gage is socially inappropriate and does not appreciate social queues. His emotional stability is fragile in that:
>
>>a. He is easily agitated;
>>
>>b. He frequently manifests depressed behavior;
>>
>>c. He is easily frustrated;
>>
>>d. He experiences anxiety when around new people or environments;
>>
>>e. He is easily confused due to his inability to track conversations; and
>>
>>f. He comes highly defensive when he is confused or misunderstanding something.
>
>12. Mr. Gage often struggles with the misapplication of words when articulating his thoughts. When questioned for clarification purposes, he becomes defensive. This feature of his behavior is exacerbated by his inability to sleep. These factors cause a greater degree of impairment.

(AR 596-97).

In addition, Dr. Walkotten stated that "[t]he limitations described are permanent limitations exhibited since the time of surgery" and that "[t]here is no known medical treatment" (AR 597). The doctor concluded that plaintiff "exhibits marked restrictions in activities of daily living, social functioning and concentration, persistence and pace" and that he "meets or equals in severity listing 12.02" (AR 597). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.02 (Organic Mental Disorders).

The ALJ addressed Dr. Walkotten's opinion as follows:

> The undersigned also considered the sworn statement of Ruth Walkotten, D.O. in Exhibit 7F but accords no weight since her opinions were rendered well after his date last insured status. Although she was his treating doctor before his date last insured, her opinions are not supported by her treatment records and notes regarding the severity of the claimant's condition as it existed prior to the date last insured. Dr. Walkotten stated the claimant's deficits in short-term memory interrupted his normal daily activities, but her assessments indicated his memory was returning and he reported he was reading, remembering mathematical algorithms, remembering concepts he was reading from books, remembering technical things, writing papers, keeping very active at home, working around the house, working in the yard, swimming for exercise, walking every day for an hour, and even went to Canada (Exhibits 9F/37, 41; 10F/16, 18, 46, 50, 51, 60, and 65; 11F/2; and 12F/3, 6, and 10). Moreover, the claimant noted to the neurologist in April 1997 a flood of recall of remote memories that he had not identified in years (Exhibit 2F/11). Dr. Walkotten stated his obsessive-compulsive traits interfered with his ability to work with others, but there was no diagnosis of a compulsive disorder (Exhibits 9F). Dr. Walkotten opined he is incapable of maintaining a schedule independently, requires repeated reminders, and his ability to maintain a schedule is complicated by his reluctance to leave home; however, the claimant testified he gets things done and follows a schedule, has no problem leaving home but does not go far away, and goes to the store alone. Furthermore, the claimant stated to Dr. Walkotten that he was doing good and trying to keep busy (Exhibit 11F/6).

(AR 35).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ gave good reasons for assigning no weight to Dr. Walkotten's opinion. Based on this record, plaintiff must prove that he was disabled between his alleged onset date of March 17, 1997 and his date last insured of December 31, 2003. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984) ("insured status is a requirement for an award of disability insurance benefits"). Although Dr. Walkotten stated that plaintiff's limitations "are permanent limitations exhibited since the time of surgery" and expressed a number of opinions regarding plaintiff's condition from March 1997 through June 2011, she does not refer to treatment records generated during the relevant time frame (i.e., March 17, 1997 through December 31, 2003). Nor does Dr. Walkotten explicitly address plaintiff's limitations during the relevant time frame. The doctor's

conclusory statements summarizing plaintiff's mental condition over a 14-year time period, without reference to any medical records or the relevant time frame, are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c)(2).

In addition, Dr. Walkotten issued her statement more than seven years after the expiration of plaintiff's insured status. Her opinion includes statements regarding plaintiff's condition as of the date of her statement (e.g., "[plaintiff] *meets or equals* in severity listing 12.02" and "I have concluded that [plaintiff] *is incapable* of maintaining full-time competitive employment effectively, appropriately and independently on a sustained basis") (AR 597) (emphasis added). Such statements are without probative value. Evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). *See Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (where doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim); *Johnson v. Commissioner of Social Security*, 535 Fed.Appx. 498, 506 (6th Cir. 2013) (ALJ properly discounted a treating physician's RFC assessment given more than 1 1/2 years after the claimant's date last insured because the assessment "likely described a deterioration in [the claimant's] condition, rather than [the claimant's] condition during the time period in question"); *Strong v. Social Security Administration*, 88 Fed.Appx. 841, 845 (6th Cir. 2004) ("[e]vidence of disability obtained after the expiration of insured status is generally of little probative value"). The ALJ's decision to assign no weight to Dr. Walkotten's opinions is supported by substantial evidence. Accordingly, plaintiff's claim will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: July 8, 2015  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge